UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**DAVID HANEY,**

    **Plaintiff,**                              Case No. 16-cv-13227

    v.                                     District Judge Nancy G. Edmunds

**CORIZON INSURANCE COMPANY,**     Magistrate Judge Mona K. Majzoub
**et al.,**

    **Defendants.**
_____/

## REPORT AND RECOMMENDATION

    Plaintiff David Haney filed this *pro se* civil rights matter against a number of employees of the Michigan Department of Corrections, healthcare providers employed by MDOC contractors, and two health insurance companies. (Docket no. 1.) Plaintiff claims that Defendants denied him adequate medical care in violation of the Eighth and Fourteenth Amendments to the United States Constitution, Article I, section 17 of the Michigan Constitution, and the Americans with Disabilities Act. (*Id.* at 3.) He seeks monetary damages including "costs and fees," as well as declaratory and injunctive relief. (*Id.* at 45.)

    Defendants Nicki Monroe, Addie Briske, Vicki Jensen, Deborah Swickely, Bridget Ball, and Jack Bellinger (the "MDOC Defendants") filed a motion for summary judgment seeking to dismiss all claims against them. (Docket no. 52.) In addition, Defendants Corizon Health, Inc. and Robert Crompton, M.D. (the "Corizon Defendants") filed a motion to dismiss Plaintiff's claims. (Docket no. 46.) All pretrial matters have been referred to the undersigned for consideration. (Docket no. 26.) The undersigned has reviewed the pleadings and dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f).

1

**I.    RECOMMENDATION**

For the reasons stated below, the undersigned recommends that the Corizon Defendants' motion to dismiss (docket no. 46) be **GRANTED IN PART** and **DENIED IN PART**. The Court should dismiss Plaintiff's claims under the Americans with Disabilities Act, the First Amendment, the Michigan Constitution, MDOC Policy Directive 03.03.130, and all claims against Corizon Health, Inc. With respect to the statute of limitations, the Court should dismiss the claims contained in grievances ECF-13-01-0134-12e3 and ECF-12-08-2470-12d3 because those claims accrued more than three years prior to the date of Plaintiff's complaint.

The undersigned also recommends that the MDOC Defendants' motion for summary judgment (docket no. 52) be **GRANTED IN PART** and **DENIED IN PART**. The Court should dismiss Plaintiff's claims against the MDOC Defendants for failure to exhaust administrative remedies except as follows:

- The claims alleged in ECF-2013-08-2127-12d1 may proceed against Defendants Monroe and Jensen;
- The claims alleged in ECF-2013-07-1768-12f may proceed against Defendant Monroe;
- The claims alleged in ECF-2013-05-1410-12e3 may proceed against Defendants Jensen, Briske, Russell, Bellinger, and Ball;
- The claims alleged in ECF-2013-05-1269-12e1 may proceed against Defendants Swickley and Briske;
- The claims alleged in ECF-2013-04-1170-12e4 may proceed against Defendant Briske.

In addition, the Court should permit Plaintiff to maintain claims against the MDOC Defendants in their official capacities to the extent that those claims request prospective relief. Finally, the Court should deny the MDOC Defendants' motion for summary judgment on Plaintiff's Eighth Amendment Claim, in order to permit the parties to take discovery.

## II.  REPORT

### A.  Background

The alleged events giving rise to Plaintiff's claims began in February 2012, when Plaintiff was transferred to Oaks Correctional Facility ("ECF") in Manistee, Michigan. According to his complaint, at the time, he was wearing orthopedic shoes prescribed to him at his previous institution. (Docket no. 1, p. 25.) He alleges that he requires these shoes due to a "deformity" in his left foot. (*Id.* at 27.) Plaintiff contends that in June of 2012, he asked Defendant Crompton to prescribe him new orthopedic shoes, because his old ones were worn out. (*Id.* at 26.) Plaintiff claims that Defendant Crompton refused to order him new shoes because Defendant Corizon Insurance Company "wasn't going to approve them anyway," and that Defendant Crompton further refused to give him any pain medicine or prescribe a proper antibiotic for blisters that eventually developed. (*Id.* at 26–27) Plaintiff continued to request the shoes from Defendant Crompton, and made a request to Defendant Monroe to see a specialist concerning his feet, throughout his stay at ECF. (*Id.* at 26, 27, 28, 29, 33, 39, 41, 42–43.) In April 2013, he received athletic shoes, but he contends that his issues persisted (*id.* at 33); and in July 2013, he received "'velcro' prescription shoes" that were too large (*id.* at 41.) In the meantime, he developed an open foot ulcer. (*Id.* at 40.) Plaintiff claims that from July 17, 2013, through August 20, 2013, he "had to walk in excruciating pain daily to healthcare to see [Defendants] RN Jensen, RN Swickley, RN Brisk[e], LPN Ball, RN Bellinger, RN Russell, RN Supervisor Monroe, and Dr. Crompton," and that when he saw them, all they did was give his foot a "cursory glance," despite the fact that it continued to worsen. (*Id.* at 42.) He also alleges that Defendant Monroe refused to trim a toenail that was "cutting into the toe that had the ulcer on it." (*Id.* at 42.) Plaintiff further contends that on August 29, 2013, a "substitute" doctor

ordered "40 mg of depo-medrol injection," for Plaintiff's foot pain, but that Defendant Crompton refused to administer it. (*Id.* at 43.)

Plaintiff also alleges that a number of the Defendants denied him proper care concerning the administration of insulin for his diabetes. Plaintiff claims that, on November 6, 2012, he informed Defendant Crompton that the "nursing staff was giving him the fast acting insulin improperly," which would cause Plaintiff's "heart rate to accelerate at a high rate . . . and have him sweating and feeling fatigue[d] with a lack of coordination." (*Id.* at 29.) He claims that Dr. Crompton did nothing, and that his similar complaints to Defendants "RN Russell, RN Jensen, RN Briske, RN Swickl[e]y, LPN Ball, RN Bellinger, and supervisor RN Monroe" also went unanswered. (*Id.* at 30.) Plaintiff further claims that Defendant Briske denied him required insulin injections twice in January 2013 (*id.* at 31), that Defendant Russell failed to address extremely low blood sugar in April 2013 (*id.* at 32), that Defendant Crompton refused to adjust Plaintiff's insulin dose on April 10, 2013, and that Defendant Briske refused to provide Plaintiff with honey and glucose tablets (*id.* at 33).

Plaintiff also contends that Defendants denied care with respect to his complaints of chest pain and difficulty breathing, which according to Plaintiff caused him to suffer a heart attack in May of 2013. (Docket no. 1, p. 32.) Plaintiff claims that on April 28, 2013, Defendants Briske and Swickley failed to address his complaints of chest pain. (*Id.* at 33.) Plaintiff further asserts that throughout the day on May 8, 2013, he was suffering from major chest pain and could not breathe properly, but when he complained about it to Defendants Jensen, Swickley, Ball, Russell, and Bellinger, they refused to perform an "ECG procedure to rule out if a heart attack was in progress." (*Id.* at 34–35.) The following day, Plaintiff was taken to West Shore Medical Center, where, he claims, doctors determined that he had a heart attack. (*Id.* at 37.) He was then

4

transported to McLaren Greater Lansing Hospital, where he was admitted for eight days. (*Id.* at 38.) Plaintiff alleges that, upon his return to ECF, Defendants Swickley and Crompton refused to administer the pain medications recommended by the doctors at McLaren, and that Defendant Crompton allegedly proceeded to restrict Plaintiff to "one Excedrin every twelve hour[s]." (*Id.*)

Plaintiff filed the instant Complaint on September 7, 2016, and, although he does not set forth specific counts, he seemingly asserts that each of these actions constitutes a denial of adequate medical care in violation of the Eighth and Fourteenth Amendments to the United States Constitution, as well as a violation of the Michigan Constitution and the Americans with Disabilities Act. (Docket no. 1 at 3.)

On August 28, 2017, the Court entered an Order severing Plaintiff's claims against Defendants Dr. Karen Rhodes and N.P. Wendy Liu. (Docket no. 42.) Presently before the Court are the MDOC Defendants' motion for summary judgment (docket no. 52) and the Corizon Defendants motion to dismiss Plaintiff's claims (docket no. 46).

**B.     Governing Law**

*1.     Corizon Defendants' Motion to Dismiss*

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. The court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). To survive a Rule 12(b)(6) motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Bell Atlantic Corp. v.*

5

*Twombly*, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted). *See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).

This acceptance of factual allegations as true, however, is inapplicable to legal conclusions: "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (internal quotations and citations omitted). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* To make this determination, a court may apply the following two-part test: (1) "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth;" and (2) "assume [the] veracity [of the remaining allegations] and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

In addressing motions under Rule 12(b)(6), the Sixth Circuit recognizes that, in addition to the allegations of the complaint, the court "may also consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice." *Ley v. Visteon Corp.*, 543 F.3d 801, 805 (6th Cir. 2008).

>  2. *MDOC Defendants' Motion for Summary Judgment*

Defendant moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Docket no. 43.) Summary judgment is appropriate where the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of showing an absence of

6

evidence to support the non-moving party's case. *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). Rule 56 provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Covington*, 205 F.3d at 915. A mere scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Ultimately, a district court must determine whether the record as a whole presents a genuine issue of material fact, drawing "all justifiable inferences in the light most favorable to the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)*; Hager v. Pike County Bd. Of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002).

In responding to a motion for summary judgment based on failure to exhaust available administrative remedies, it is not the prisoner's burden to plead or prove that he has successfully done so. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Rather, failure to exhaust administrative remedies is an affirmative defense, *Jones*, 549 U.S. at 216, and so Defendants carry the burden of persuasion on the issue, *Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012). "In cases

7

where the party moving for summary judgment also bears the burden of persuasion at trial, the party's 'initial summary judgment burden is higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Surles*, 678 F.3d at 455–56 (quoting *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)). In such cases, "[s]ummary judgment is appropriate only if defendants establish the absence of a 'genuine dispute as to any material fact' regarding non-exhaustion." *Id.* (citing *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011)).

      **C.    Analysis**

Plaintiff asserts that Defendants acted with deliberate indifference to his medical needs. In support, Plaintiff relies on numerous factual allegations occurring between February of 2012 and May of 2015. Plaintiff also directs the Court to nine grievances that he filed with the MDOC in connection with those allegations. The Corizon Defendants move to dismiss Plaintiff's complaint, contending that several of Plaintiff's claims are barred by the statute of limitations, and that Plaintiff fails to state a claim on which relief may be granted. The MDOC Defendants filed a motion for summary judgment based on similar grounds, and further contends that, with respect to certain claims, Plaintiff failed to exhaust his administrative remedies. As discussed more fully below, both motions should be granted in part and denied in part. The Court should find that several of Plaintiff's claims are barred by the statute of limitations and should dismiss certain claims with respect to which Plaintiff failed to exhaust his administrative remedies. The Court should further dismiss Plaintiff's Americans with Disabilities Act ("ADA") claim, his claim based on the Michigan Constitution, all claims against Corizon Health, Inc., and any First Amendment claim because, with respect to those counts, Plaintiff fails to state a claim on which

relief may be granted. However, with respect to certain allegations, Plaintiff adequately pleads a claim of deliberate indifference under the Eighth and Fourteenth Amendments. Because the parties have yet to undertake discovery, the Court should deny without prejudice the MDOC Defendants' motion for summary judgment regarding that claim.

### *1.   Exhaustion of Administrative Remedies*

The MDOC Defendants contend that Plaintiff failed to exhaust his administrative remedies with respect to several claims. (Docket no. 52, p. 12.) In particular, the MDOC Defendants submit that certain grievances do not name any of the MDOC Defendants and that no grievance identifies Defendants Ball or Bellinger. (*Id*. at 17.)

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust all administrative remedies before filing a § 1983 action. Specifically, the statute provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement is mandatory and requires a prisoner to comply with state procedural rules such as time limits for filing grievances and other critical procedural rules. *Jones v. Bock*, 549 U.S. 199, 211 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "[P]roper exhaustion of administrative remedies . . . means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90 (citation omitted). "Under the [Michigan] Department of Corrections' procedural rules, inmates must include the '[d]ates, times, places and names of all those involved in the issue being grieved' in their initial grievance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010).

Plaintiff refers the Court to nine grievances that he filed in connection with the allegations underpinning his complaint, which are listed below:

- ECF-2012-08-2470-12d3
- ECF-2013-01-0134-12e3
- ECF-2013-04-1170-12e4
- ECF-2013-05-1269-12e1
- ECF-2013-05-1410-12e3
- ECF-2013-05-1422-12-f
- ECF-2013-07-1768-12f
- ECF-2013-08-2127-12d1
- JCF-2014-09-2066-12f

(Docket no. 1, p. 5.) As described above, the Court severed the claims against Defendants Dr. Karen Rhodes and N.P. Wendy Liu, which were the subject matter of grievance JCF-14-09-2066-12f. In addition, as discussed below, the undersigned recommends that the Court should dismiss the claims associated with the two oldest grievances, ECF-12-08-2470-12d3 and ECF-13-01-0134-12e3, which are barred by the statute of limitations.

The MDOC Defendants contend that "[a]mong the six remaining grievances, only five name State Defendants, and none of them names State Defendants Ball or Bellinger." (Docket no. 52, p. 17.) Plaintiff does not contest the MDOC Defendants' contention that grievance ECF-13-05-1422-12f—which relates to an alleged denial of treatment by Defendant Crompton—does not name any MDOC Defendant. In addition, the parties agree that grievance ECF-13-05-1269-12e1 identifies Defendants Swickley and Briske. However, as set forth in the below table, Plaintiff and the MDOC Defendants dispute which Defendants were identified in Plaintiff's four other grievances.

10

| GRIEVANCE IDENTIFIER | DEFENDANTS' POSITION (Docket no. 52, p. 11.) | PLAINTIFF'S POSITION (Docket no. 56, p. 2.) |
|---|---|---|
| ECF-13-08-2127-12d1 | Monroe | Monroe, Jensen |
| ECF-13-07-1768-12f | Monroe | Monroe, Jensen |
| ECF-13-05-1410-12e3 | Jensen, Briske | Jensen, Briske, Russell, Bellinger, Ball, Swickley |
| ECF-13-04-1170-12e4 | Briske | Briske, Monroe |

Upon review of the grievances at issue, neither side is entirely correct. Plaintiff is correct that grievance ECF-13-08-2127-12d1 identifies Defendants Monroe and Jensen. (Docket no. 52-3, p. 9.) The MDOC Defendants are correct that grievance ECF-13-07-1768-12f identifies only Defendant Monroe. (*Id.* at 19.) Grievance ECF-13-05-1410-12e3 identifies Defendants Jensen, Briske, Russell, Bellinger, and Ball, but not Defendant Swickley. (*Id.* at 39-40.) Finally, the MDOC Defendants are correct that grievance ECF-13-04-1170-12e4 identifies only Defendant Briske. (*Id.* at p. 101.)

Accordingly, the Court should dismiss Plaintiff's claims against the MDOC Defendants except as follows:

- The claims alleged in ECF-2013-08-2127-12d1 may proceed against Defendants Monroe and Jensen;
- The claims alleged in ECF-2013-07-1768-12f may proceed against Defendant Monroe;
- The claims alleged in ECF-2013-05-1410-12e3 may proceed against Defendants Jensen, Briske, Russell, Bellinger, and Ball;
- The claims alleged in ECF-2013-05-1269-12e1 may proceed against Defendants Swickley and Briske;
- The claims alleged in ECF-2013-04-1170-12e4 may proceed against Defendant Briske.

*2. Statute of Limitations*

Defendants assert that several of Plaintiff's claims are barred by the statute of limitations. (Docket no. 46, p. 22; docket no. 52, p. 19.) Plaintiff's complaint, which is dated August 30, 2016, contains allegations arising as early as February of 2012. (Docket no. 1, pp. 23-45.)

In *Wilson v. Garcia*, 471 U.S. 261, 276–280 (1985), the Supreme Court held that the appropriate statute of limitations to be applied in all § 1983 actions is the state statute of limitations governing actions for personal injury. Subsequently, in *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986), the Sixth Circuit held that Michigan's three year statute of limitations for personal injury claims governs § 1983 actions when the cause of action arises in Michigan.

The accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law. *Wallace v. Kato*, 549 U.S. 384, 388, 127 S. Ct. 1091, 1095 (2007). The statute of limitations begins to run in a § 1983 action when a plaintiff knows or has reason to know of the act providing the basis for the injury has occurred. *See Edison v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007) (citing *Kuhnle Bros., Inc. v. County of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997)). The statute of limitations for claims subject to the PLRA is tolled while the plaintiff exhausts his required administrative remedies. *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000). Therefore, the limitation period did not run while Plaintiff invoked the MDOC grievance process.

Of the nine grievances referenced by Plaintiff, two had been exhausted through Step III of the MDOC grievance process more than three years prior to the date of Plaintiff's complaint, which was filed on August 30, 2016, given the benefit of the "prison mailbox rule" of *Houston v. Lack*, 487 U.S. 266, 270 (1988) and *Richard v. Ray*, 290 F.3d 810 (6th Cir. 2002). In particular, grievance ECF-13-01-0134-12e3 was exhausted on July 31, 2013, and grievance ECF-12-08-

12

2470-12d3 was exhausted on May 31, 2013. (Docket no. 52-3, pp. 3-5.) In contrast, the claims contained in grievances ECF-2013-08-2127-12d1 (January 31, 2014), ECF-2013-07-1768-12f (December 18, 2013), ECF-13-05-1422-12f (October 31, 2013), ECF-2013-05-1410-12e3 (October 31, 2013), ECF-2013-05-1269-12e1 (October 10, 2013), and ECF-2013-04-1170-12e4 (September 30, 2013) were filed within the three-year statute of limitations. (*Id.*)

Accordingly, the Court should dismiss the claims contained in grievances ECF-13-01-0134-12e3 and ECF-12-08-2470-12d3.

### 3. *Americans with Disabilities Act Claim*

Defendants request the Court to dismiss Plaintiff's claim under the Americans with Disabilities Act ("ADA"). (Docket no. 46, p. 24; docket no. 52, p. 27.) Plaintiff failed to respond to this request. (*See generally* docket no. 56.)

To establish a *prima facie* case of intentional discrimination under Title II of the ADA, a plaintiff must show that: (1) he has a disability; (2) he is otherwise qualified; and (3) he was being excluded from participation in or denied the benefits of services, programs, or activities of a public entity. *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015).

Plaintiff's complaint contains no factual allegations that would support his nominal ADA claim. Accordingly, the Court should dismiss that count for failure to state a claim on which relief may be granted.

### 4. *Claims against Corizon Health, Inc.*

The Corizon Defendants contend that Corizon Health, Inc. cannot be held liable under the theory of *respondeat superior*. (Docket no. 46, p. 25 (citing *Monell v. Department of Social Servs.*, 436 U.S. 658, 663 (1978)).) Defendants assert that in order to state a claim of deliberate indifference against Corizon Health, Inc., Plaintiff must allege that Corizon imposes a policy,

13

practice, or custom of unconstitutional conduct, and must "identify the policy, connect the policy to [Corizon] and show that the particular injury was incurred because of the execution of that policy." (*Id.* at 32 (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)).).

Plaintiff fails to respond to this argument. (*See generally* docket no. 56.) In addition, Plaintiff's complaint contains no allegations regarding a "policy, practice, or custom of unconstitutional conduct" by Corizon Health, Inc. Accordingly, the Court should dismiss Plaintiff's claims against Corizon Health, Inc.

### 5. *First Amendment Retaliation Claim*

The Corizon Defendants move to dismiss Plaintiff's claim of retaliation under the First Amendment. (Docket no. 46, p. 27.)

Prison officials may not retaliate against inmates who have engaged in constitutionally protected activities or conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999). A retaliation claim has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Id*. (citations omitted).

Plaintiff's complaint contains no factual allegations that he engaged in protected conduct or that an adverse action was taken against him as a result of such conduct. Accordingly, the Court should dismiss Plaintiff's First Amendment Claim.

### 6. *Due Process Claim*

The Corizon Defendants move to dismiss any Fourteenth Amendment due process claim. (Docket no. 46, p. 29.) On review of Plaintiff's complaint, it appears that Plaintiff raises the

issue of due process only for the purpose of "incorporating" his Eighth Amendment claim to apply against state officials. *See Mapes v. Tate*, 388 F.3d 187, 193 (6th Cir. 2004) ("It is well settled, of course, that the . . . Eighth Amendment[] [is] applicable to the states through the Fourteenth Amendment.") (citing *Duncan v. Louisiana*, 391 U.S. 145, 148 (1968)). On this reading of Plaintiff's complaint, Defendants' request to dismiss this claim is rendered moot. However, to the extent that Plaintiff intends to maintain a separate "procedural due process" claim, the complaint fails to plead facts that would support such a theory, and the Court should grant Defendants' request to dismiss that claim.

### 7. "Inhumane Treatment" Claim

The Corizon Defendants move to dismiss Plaintiff's claim of "inhumane treatment" based on MDOC Policy Directive 03.03.130. (Docket no. 46, p. 34.)

Allegations of state law or state constitutional violations cannot by themselves support a § 1983 claim. *Laney v. Farley*, 501 F.3d 577, 58 n.2 (6th Cir. 2007) (citing *Neinast v. Board of Trustees*, 346 F.3d 585, 597 (6th Cir. 2003)). Similarly, a § 1983 claim may not be based upon a violation of state procedure that does not violate federal law. *Id.* (citing *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001).

Accordingly, the Court should dismiss Plaintiff's claim that Defendants violated MDOC Policy Directive 03.03.130. For similar reasons, the Court should dismiss any claim based on the Michigan Constitution. (*See* docket no. 1, p. 3.)

### 8. Official Capacity Claims

The MDOC Defendants move for summary judgment of Plaintiff's claims against MDOC employees in their official capacities. (Docket no. 52, p. 29.)

In support, the MDOC Defendants assert that "[t]he Eleventh Amendment to the United States Constitution bars suit in federal court against a state, its agencies, and officials sued in their official capacity, unless this immunity is expressly waived by either the state or Congress. (*Id.* (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 120 (1984)).)

The MDOC Defendants fail to acknowledge that "[w]hether a suit against State officials in their official capacity is deemed to be against the State depends on whether the plaintiff seeks 'retroactive' or 'prospective' relief." *Doe v. Wigginton*, 21 F.3d 733, 736 (6th Cir. 1994) (citation omitted). In this case, Plaintiff requests prospective relief, including that he be "provided medical care for ongoing and long-tern injuries, which are directly or indirectly related to the injuries explained [in the complaint]." (Docket no. 1, p. 45.) Accordingly, Plaintiff should be permitted to maintain claims against the MDOC Defendants in their official capacities to the extent that those claims request prospective relief. The Court is not called upon at this time to address the merits of such requests for prospective relief.

 9. *Eighth Amendment Claim*

Finally, the MDOC Defendants request that the Court grant summary judgment in their favor on Plaintiff's Eighth Amendment deliberate indifference claim. (Docket no. 52, pp. 21-27.) In support, the MDOC Defendants contend that Plaintiff "did not endure any conditions that posed a risk of objectively, sufficiently serious harm" and that the MDOC Defendants "did not act with deliberate indifference to [Plaintiff's] serious medical needs." (*Id.* at 24-26.)

Rule 56(d) of the Federal Rules of Civil Procedure provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to a motion for summary judgment], the court may: (1) defer considering the motion

16

or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."

In this regard, "[i]t is well-established that the plaintiff must receive 'a full opportunity to conduct discovery' to be able to successfully defeat a motion for summary judgment." *Ball v. Union Carbide Corp.*, 385 F.3d 713, 719-20 (6th Cir. 2004) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Plaintiff, in multiple submissions to the Court, has expressed a need to conduct discovery in this matter. (*See* docket no. 51, p. 2 (requesting the assistance of counsel because "[t]his case will . . . involve depositions of all the witnesses and defendant's [*sic*] involved in this matter"); docket no. 43 (requesting that Defendants provide a copy of his medical records).) Accordingly, the Court should deny the MDOC Defendants' motion for summary judgment on Plaintiff's Eighth Amendment Claim, in order to permit the parties to take discovery.

### D.     Conclusion

For the reasons stated herein, the undersigned recommends that the Corizon Defendants' motion to dismiss (docket no. 46) be **GRANTED IN PART** and **DENIED IN PART**. The Court should dismiss Plaintiff's claims under the Americans with Disabilities Act, the First Amendment, the Michigan Constitution, MDOC Policy Directive 03.03.130, and all claims against Corizon Health, Inc. With respect to the statute of limitations, the Court should dismiss the claims contained in grievances ECF-13-01-0134-12e3 and ECF-12-08-2470-12d3 because those claims accrued more than three years prior to the date of Plaintiff's complaint.

The undersigned also recommends that the MDOC Defendants' motion for summary judgment (docket no. 52) be **GRANTED IN PART** and **DENIED IN PART**. The Court should

17

dismiss Plaintiff's claims against the MDOC Defendants for failure to exhaust administrative remedies except as follows:

- The claims alleged in ECF-2013-08-2127-12d1 may proceed against Defendants Monroe and Jensen;
- The claims alleged in ECF-2013-07-1768-12f may proceed against Defendant Monroe;
- The claims alleged in ECF-2013-05-1410-12e3 may proceed against Defendants Jensen, Briske, Russell, Bellinger, and Ball;
- The claims alleged in ECF-2013-05-1269-12e1 may proceed against Defendants Swickley and Briske;
- The claims alleged in ECF-2013-04-1170-12e4 may proceed against Defendant Briske.

In addition, the Court should permit Plaintiff to maintain claims against the MDOC Defendants in their official capacities to the extent that those claims request prospective relief. Finally, the Court should deny the MDOC Defendants' motion for summary judgment on Plaintiff's Eighth Amendment Claim, in order to permit the parties to take discovery.

### III. NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Eastern District of Michigan Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829

F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: April 16, 2018         s/ Mona K. Majzoub
                              MONA K. MAJZOUB
                              UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Plaintiff and counsel of record on this date.

Dated: April 16, 2018         s/ Leanne Hosking
                              Case Manager