**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**DAVID HANEY,**

    **Plaintiff,**                                 Case No. 16-cv-13227

    v.                                       District Judge Nancy G. Edmunds

**DR. ROBERT CROMPTON, et al.**        Magistrate Judge Mona K. Majzoub

    **Defendants.**

_____/

**REPORT AND RECOMMENDATION**

Plaintiff David Haney filed this *pro se* civil rights matter against Nicki Monroe, Addie Briske, Vicki Jensen, Deborah Swickley, Bridget Ball, Jennifer Russell, and Jack Bellinger, who are employees of the Michigan Department of Corrections ("MDOC"), and Dr. Robert Crompton, who is employed by Corizon Health, Inc. (Docket no. 1.) Plaintiff claims that Defendants denied him adequate medical care in violation of the Eighth Amendment to the United States Constitution. (*Id.* at 3.)

Before the Court are three motions for summary judgment. Defendant Crompton filed a motion for summary judgment, contending that Plaintiff's claims against him should be dismissed as a matter of law. (Docket no. 78.) The MDOC Defendants, Nicki Monroe, Addie Briske, Vicki Jensen, Deborah Swickely, Bridget Ball, and Jack Bellinger, also seek summary judgment of Plaintiff's claims. (Docket no. 102.) And finally, Plaintiff filed a motion for partial summary judgment with respect to his claims against Defendant Crompton. (Docket no. 103.) All pretrial matters have been referred to the undersigned for consideration. (Docket no. 26.) The undersigned has reviewed the pleadings and dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f).

1

**I. RECOMMENDATION**

For the reasons stated below, the undersigned recommends that Defendant Crompton's motion for summary judgment (docket no. 78) be **GRANTED** and that Plaintiff's claims against Dr. Crompton (Grievance no. 2013-05-1422 and Grievance no. 2013-07-1768) be dismissed. For the same reasons, the undersigned recommends that Plaintiff's motion for partial summary judgment (docket no. 103) be **DENIED**.

In addition, the undersigned recommends that the MDOC Defendants' motion for summary judgment (docket no. 102) be **GRANTED IN PART** and **DENIED IN PART** as follows:

- The Court should dismiss the claims described in Grievance No. 2013-04-1170.
- The Court should dismiss the claims described in Grievance No. 2013-05-1269.
- The Court should dismiss the claims described in Grievance No. 2013-05-1410 against Defendants Bellinger and Ball, but the Court should not dismiss those claims against Defendant Briske and Defendant Jensen.
- The Court should dismiss the claims described in Grievance No. 2013-08-2127.

**II. REPORT**

**A. Background**

Plaintiff David Haney is a prisoner in the custody of the Michigan Department of Corrections ("MDOC") at Lakeland Correctional Facility in Coldwater, MI. (Docket no. 65.) The alleged events giving rise to Plaintiff's claims began in February 2012, when Plaintiff was transferred to Oaks Correctional Facility ("ECF") in Manistee, Michigan. (Docket no. 1.)

In an order dated May 21, 2018, the Court dismissed several of Plaintiff's claims because they were not properly exhausted, were filed beyond the statute of limitations, or failed to state a claim on which relief may be granted. (Docket no. 59.) Plaintiff's remaining claims allege that

Defendants violated the Eighth Amendment by acting with deliberate indifference to his medical needs on six separate occasions between April 16, 2013 and August 20, 2013. (Docket no. 52-3, pp. 9–64.)

On April 16, 2013 (Grievance No. 2013-04-1170), Plaintiff, who has diabetes, attempted to exchange empty honey packets for new ones to control his blood sugar. (*Id.* at 61.) He alleges that Defendant Briske refused to give him additional honey packets and instead referred him for an unnecessary medical appointment. (*Id.*)

Plaintiff contends that on April 28, 2013 (Grievance No. 2013-05-1269) his unit officer called the nurse's station to report that Plaintiff's blood sugar was low. (*Id.* at 56.) Plaintiff alleges that Defendants Swickley and Briske refused to call him out for medical attention and instead recommended that he receive honey packets. (*Id.*)

On May 8–9, 2013 (Grievance No. 2013-05-1410), Plaintiff experienced chest pain and shortness of breath that led to him being hospitalized for several days. (*Id.* at 39–40.) Plaintiff alleges that at 10:15 a.m. on May 8, he was "on a call-out to be reviewed on a grievance for lack of care by RN Jensen" when he started "experiencing chest pain" and "having extreme difficulty breathing." (*Id.* at 39.) Plaintiff asserts that Defendant Jensen "showed no concern for [his] medical issue" and instead "asked if [Plaintiff] would sign off on [the] grievance." (*Id.*) Plaintiff alleges that he tried to convey the seriousness of his medical condition, but that Defendant Jensen told him to report to his food-service assignment. (*Id.*) When Plaintiff reported to the insulin line around 5:30 p.m. that day, he complained to Defendant Russell that he was having chest pain and difficulty breathing. (*Id.*) Defendant Russell observed that Plaintiff displayed an "occasional audible expiatory wheeze," and had "LOW O2 sat (<93%)." (Docket no. 102-2, p. 12.) Defendant Russell scheduled Plaintiff to be evaluated by Defendant Crompton the next day, and sent Plaintiff

3

back to his cell for the night. (*Id.*; docket no. 52-3, p. 40.) Plaintiff contends that throughout that evening he "continued to gasp for air and experienced frequent coughing." (Docket no. 52-3, p. 40.) The next morning, Plaintiff reported to the insulin line and reported that he was still having difficulty breathing. (*Id.*) Upon entering the health unit, Plaintiff's blood pressure was 178/89, his heartrate was 123, his breathing was rapid, and his "O2 sat" was 81%. (Docket no. 102-2, p. 6.) Plaintiff alleges that Defendant Briske checked his blood sugar but did not treat his chest pain or shortness of breath because she believed that Plaintiff was faking those symptoms. (Docket no. 106, p. 3.) Upon examining Plaintiff, Defendant Ball gave Plaintiff supplemental oxygen. (Docket no. 52-3, p. 40.) Shortly thereafter, Plaintiff was transported by ambulance to West Shore Medical Center and then to McLaren Hospital, where Dr. Ibrahim Shah concluded that Plaintiff suffered a "[n]on-ST elevation myocardial infarction." (Docket no. 79, pp. 9–12.)

On May 22, 2013 (Grievance No. 2013-05-1422), Plaintiff visited Defendant Crompton to obtain medications that were prescribed to him upon discharge from McLaren Hospital, including an aspirin chew tab, carvedilol, gabapentin, hydrocodone-acetamin, and orthopedic shoes. (Docket no. 52-3, p. 49.) Plaintiff contends that Defendant Crompton denied him these medications. (*Id.*)

On July 3, 2013 (Grievance No. 2013-07-1768), Plaintiff visited Dr. Crompton to seek an adjustment to his medications and a referral to the dietician for consultation regarding a low-sodium diet. (*Id.* at 19.) Plaintiff contends that Dr. Crompton denied both requests. (*Id.*)

On August 20, 2013 (Grievance No. 2013-08-2127), Plaintiff asked Defendant Monroe to trim one of his toenails because the nail was cutting into a sore on his foot. (*Id.* at 9.) Plaintiff alleges that Defendant Monroe refused to trim his nail and instead referred him to Defendant Crompton to have the nail treated. (*Id.*)

Defendants move for summary judgment of the remaining claims, contending that no reasonable trier of fact could find that any Defendant acted with deliberate indifference to Plaintiff's medical needs. (Docket no. 78; docket no. 102.) Plaintiff objects to the relief requested by Defendants (docket no. 81; docket no. 99; docket no. 106) and moves for summary judgment in his favor with respect to the claims against Dr. Crompton (docket no. 103).

### B.     Governing Law

Summary judgment is appropriate where the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). Rule 56 provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Covington*, 205 F.3d at 915. A mere scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252

5

(1986). Ultimately, a district court must determine whether the record as a whole presents a genuine issue of material fact, drawing "all justifiable inferences in the light most favorable to the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)*; Hager v. Pike County Bd. Of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002).

In responding to a motion for summary judgment based on failure to exhaust available administrative remedies, it is not the prisoner's burden to plead or prove that he has successfully done so. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Rather, failure to exhaust administrative remedies is an affirmative defense, *Jones*, 549 U.S. at 216, and so Defendants carry the burden of persuasion on the issue, *Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012). "In cases where the party moving for summary judgment also bears the burden of persuasion at trial, the party's 'initial summary judgment burden is higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Surles*, 678 F.3d at 455–56 (quoting *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)). In such cases, "[s]ummary judgment is appropriate only if defendants establish the absence of a 'genuine dispute as to any material fact' regarding non-exhaustion." *Id.* (citing *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011)).

### C. Analysis

Plaintiff contends that Defendants violated the Eighth Amendment by acting with deliberate indifference to his medical needs. (Docket no. 1.) Defendants deny Plaintiff's allegations and move for summary judgment in their favor. (Docket no. 78; docket no. 102.)

The Eighth Amendment provides an inmate the right to be free from cruel and unusual punishment. "[A] prisoner's Eighth Amendment right is violated when prison doctors or officials are deliberately indifferent to the prisoner's serious medical needs." *Comstock v. McCrary*, 273

6

F.3d 693, 702 (6th Cir. 2001) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). An Eighth Amendment claim on these grounds is comprised of an objective and a subjective component. *Clark–Murphy v. Foreback*, 439 F.3d 280, 292 (6th Cir. 2006).

The objective component requires the plaintiff to show that the medical need at issue is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 897 (6th Cir. 2004) (quoting *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208 (1st Cir. 1990)); *see also Friend v. Rees*, 779 F.2d 50, 1985 WL 13825, at *3 (6th Cir. Oct.1, 1985)).

The subjective component requires a showing that the "official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. Express intent to inflict unnecessary pain is not required, but "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Richmond v. Huq*, 885 F.3d 928, 939 (6th Cir. 2018) (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1976); *Farmer*, 511 U.S. at 838).

Courts are "generally reluctant to second guess medical judgments." *Asplaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976)). *See also Comstock*, 273 F.3d at 703 ("The requirement that the official have subjectively perceived a risk of harm and then disregarded it is meant to prevent the constitutionalization of medical malpractice claims."). Nevertheless, treatment may be

7

constitutionally impermissible when it is "so woefully inadequate as to amount to no treatment at all." *Id*.

Below, the undersigned will analyze Plaintiff's deliberate-indifference claims as organized by the six grievances outlined above.

*1. April 16, 2013 (Grievance No. 2013-04-1170)*

Plaintiff contends that on April 16, 2013 Defendant Briske refused to provide him honey packets, which Plaintiff uses to control his blood-sugar. (Docket no. 52-3, p. 61.)

On the present record, no reasonable trier of fact could determine that Plaintiff faced a "sufficiently serious" medical issue on April 16, 2013. Plaintiff has produced no evidence that his blood-sugar was dangerously low on that date or that he suffered serious consequences from the lack of honey packets. Accordingly, the Court should dismiss the claims described in Grievance No. 2013-04-1170.

*2. April 28, 2013 (Grievance No. 2013-05-1269)*

Plaintiff contends that on April 28, 2013 Defendants Swickley and Briske refused to call him out for medical attention regarding his low blood sugar and instead offered him honey packets. (*Id.* at 56.)

Based on the evidence before the Court, no reasonable trier of fact could find that Defendants Swickley and Briske "disregarded an excessive risk to [Plaintiff's] health or safety" by recommending that Plaintiff use honey packets on April 28, 2013. Plaintiff's doctors have endorsed the use of honey packets to control his blood sugar. (*See* docket no. 79, p. 50.) Accordingly, the Court should dismiss the claims described in Grievance No. 2013-05-1269.

### *3. May 8–9, 2013 (Grievance No. 2013-05-1410)*

Plaintiff alleges that on May 8–9, 2013, Defendants Jensen, Briske, Russell, Bellinger and Ball disregarded his complaints of chest pain and shortness of breath, which resulted in Plaintiff being hospitalized for a myocardial infarction. (Docket no. 52-3, pp. 39–40.)

On the evidence before the Court, no reasonable trier of fact could find that Defendants Russell, Bellinger and Ball acted with deliberate indifference to Plaintiff's medical needs. However, genuine issues of material fact remain regarding whether Defendants Jensen and Briske acted with deliberate indifference.

Plaintiff alleges that on May 8, 2013 he complained to Defendant Jensen that he had chest pain and shortness of breath. The MDOC defendants concede that Plaintiff's chest pain may qualify as a "serious medical condition." That point is supported by caselaw in this circuit. *See Estate of Carter v. City of Detroit*, 408 F.3d 305, 307 (6th Cir. 2005) (observing that chest pain and shortness of breath are "some of the classic symptoms of a heart attack" and that they amounted to a serious medical condition). Defendants offer no evidence to contest Plaintiff's testimony that Defendant Jensen responded to Plaintiff's complaints of chest pain by asking him to sign off on a previously-filed grievance. "[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842, 114 S. Ct. 1970. Accordingly, a reasonable trier of fact could conclude that Defendant Jensen acted with deliberate indifference to Plaintiff's medical needs on May 8, 2013.

Defendants Russell and Bellinger treated Plaintiff on the evening of May 8, 2013. Plaintiff's contends that they acted with deliberate indifference by scheduling him for an appointment the next day instead of calling for emergency medical care. However, nothing in the record suggests that Defendants Russell and Bellinger deliberately disregarded Plaintiff's medical

9

needs.  The treatment notes from this encounter show that Plaintiff was treated for nearly an hour. (Docket no. 102-2, pp. 11–12.)  Plaintiff's condition improved during this session, with his pulse rate and blood pressure decreasing and his oxygen levels increasing.  (*Id.*)  Defendant Russell monitored Plaintiff's vital signs, contacted Plaintiff's physician to schedule treatment, restricted Plaintiff's activity, and directed Plaintiff to contact healthcare if his symptoms did not subside. (*Id.*)  Defendant Bellinger is not mentioned in the treatment notes.  (*Id.*)  Accordingly, Plaintiff fails to offer evidence that Defendants Bellinger and Russell acted with deliberate indifference to his medical needs on May 8, 2013.

On the morning of May 9, 2013, Plaintiff collapsed in the insulin line.  (Docket no. 106, p. 3.)  Plaintiff alleges that Defendant Briske yelled at him to get up and told Defendant Jensen that Plaintiff was faking his chest pain.  (*Id.*)  Plaintiff further contends that Defendants Briske and Jensen ignored his complaints until Defendant Ball stepped in to give Plaintiff oxygen and contact EMS.  (*Id.*)  Defendants offer no evidence to rebut these portions of Plaintiff's affidavit.  Making all reasonable inferences in Plaintiff's favor, Defendants Jensen and Briske ignored and/or made light of Plaintiff's complaints of chest pain and shortness of breath.  A review of Plaintiff's medical records on the Morning of May 9 would have revealed that Plaintiff had low oxygen levels and shortness of breath the previous evening.

Under these circumstances, the Court should dismiss Plaintiff's claims described in Grievance No. 2013-05-1410 against Defendants Bellinger and Ball, but the Court should not dismiss those claims against Defendant Briske and Defendant Jensen.

### *4. May 22, 2013 (Grievance No. 2013-05-1422)*

Plaintiff contends that on May 22, 2013, Defendant Crompton denied him several medications and treatments that were prescribed by the doctors that treated Plaintiff at McLaren Hospital from May 9–17, 2013. (Docket no. 52-3, p. 49.)

Defendant Crompton testifies that he examined Plaintiff on May 20, 2013 and again on May 22, 2013. (Docket no. 78-2, pp. 3–4.) According to Defendant Crompton, Plaintiff told an orthopedist at McLaren that he had experienced back and hip pain since he stopped wearing orthopedic shoes in 2012. (*Id.* at 3.) Defendant Crompton could not recall Plaintiff complaining of back or hip issues in his previous visits, so he performed "a straight leg raising test (both supine and sitting), which was negative." (*Id.*) Although Plaintiff had mild ternderness in the right sacroiliac joint, he had no difficulty getting onto the exam table or sitting for the duration of the twenty-minute examination. (*Id.* at 4.) Based on these observations, Defendant Crompton concluded that "[b]ecause [Plaintiff] was doing well before his hospital stay and working in food service without restriction, and because he did not find Ultram helpful, I discontinued Ultram and gabapentin." (*Id.*) On the same basis, Defendant Crompton declined to recommend that Plaintiff receive orthopedic shoes. (*Id.*) However, Defendant Crompton imposed a ten-pound lifting restriction, which "was necessary given his recent epidural steroid injection at the hospital for sciatica." (*Id.*)

On the record before the Court, no reasonable trier of fact could find that Defendant Crompton "disregarded an excessive risk to [Plaintiff's] health or safety" by discontinuing the medications and treatments recommended by the doctors who treated Plaintiff at McLaren Hospital. Plaintiff's medical records suggest that Dr. Crompton gave due consideration those

11

recommendations and simply reached a different conclusion than the doctors at McLaren. Accordingly, the Court should dismiss the claims described in Grievance No. 2013-05-1422.

### 5. *July 3, 2013 (Grievance No. 2013-07-1768)*

Plaintiff alleges that on July 3, 2013 Defendant Crompton declined to adjust Plaintiff's carvedilol/Coreg regimen and refused to refer Plaintiff to the dietician for consultation regarding a low-sodium diet. (Docket no. 52-3, p. 19.)

Defendant Crompton testifies that Plaintiff complained that the carvedilol/Coreg hurt his stomach and chest. (Docket no 78-2, p. 5.) However, when Defendant Crompton attempted to take Plaintiff's blood pressure, Plaintiff "removed the cuff, stood up, and left." (*Id.*) At that point, Defendant Crompton determined that "[b]ecause [Plaintiff] had no complaints of orthostasis associated with Coreg, . . . the risks associated with discontinuing the medication were greater than the risks of continuing the medication." (*Id.*) Defendant Crompton also recommended that Plaintiff decrease his sodium intake by avoiding unhealthy snacks at the prison store. (Docket no. 102-2, p. 5.) Plaintiff fails to contradict this testimony. (*See* docket no. 81, p. 17 (responsive affidavit).)

Based on this evidence, no reasonable trier of fact could find that Defendant Crompton "disregarded an excessive risk to [Plaintiff's] health or safety" by declining to augment his carvedilol regimen and/or by refusing to refer him to the dietician. Accordingly, the Court should dismiss the claims described in Grievance No. 2013-07-1768.

### 6. *August 20, 2013 (Grievance No. 2013-08-2127)*

Plaintiff contends that on August 20, 2013, Defendant Monroe refused to trim one of his toenails and instead referred him to Defendant Crompton to have the nail treated. (Docket no. 52-3, p. 9.)

The MDOC responded to Plaintiff's grievance by stating that "nursing staff do not cut toenails." (*Id.* at 10.) Plaintiff offers no evidence to demonstrate that the MDOC maintains this policy for punitive reasons. Nor does Plaintiff dispute that Dr. Crompton trimmed his toenails the next day. (*See* docket no. 79, p. 58.)

Based on this evidence, no reasonable trier of fact could find that Defendant Monroe acted with deliberate indifference to Plaintiff's medical needs by referring him to Defendant Crompton to have his nails trimmed. Accordingly, the Court should dismiss the claims described in Grievance No. 2013-08-2127.

### 7. *Qualified Immunity*

The MDOC Defendants contend that they are entitled to qualified immunity because Plaintiff fails to establish that they violated his "clearly established" Eighth Amendment rights. (Docket no. 102, pp. 24–25.) As set forth above, the undersigned recommends that the Court dismiss all of Plaintiff's claims except the claim that Defendants Jensen and Briske acted with deliberate indifference to Plaintiff's serious medical needs on May 8–9, 2013. The Court should find that this claim is not barred by the doctrine of qualified immunity.

"For a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) (quoting *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992)). "As early as 1972, [the sixth circuit] stated 'where the circumstances are clearly sufficient to indicate the need of medical attention for injury or illness, the denial of such aid constitutes the deprivation of constitutional due process.'" *Estate of Carter*, 408 F.3d at 313 (quoting *Fitzke v. Shappell*, 468 F. 2d 1072, 1076 (6th Cir. 1972)). Accordingly, a reasonable trier

13

of fact could find that the alleged conduct of Defendants Jensen and Briske was objectively unreasonable in light of Plaintiff's clearly established constitutional rights.

### D. Defendant Russell

Defendant Jennifer Russell has not been served with Plaintiff's complaint and has not waived service. Accordingly, Defendant Russell has not moved for summary judgment. However, for the reasons stated in this Report and Recommendation, the record before the Court does not support a deliberate indifference claim against Defendant Russell. Accordingly, in a separate order, the undersigned will notify Plaintiff pursuant to Rule 56(f) that the Court will dismiss the claim against Defendant Russell unless Plaintiff demonstrates that summary judgment of that claim is not warranted.

### F. Conclusion

For the reasons stated herein, the undersigned recommends that Defendant Crompton's motion for summary judgment (docket no. 78) be **GRANTED** and that Plaintiff's claims against Dr. Crompton be dismissed. For the same reasons, the undersigned recommends that Plaintiff's motion for partial summary judgment (docket no. 103) be **DENIED**. In addition, the undersigned recommends that the MDOC Defendants' motion for summary judgment (docket no. 102) be **GRANTED IN PART** and **DENIED IN PART** as follows:

- The Court should dismiss the claims described in Grievance No. 2013-04-1170.
- The Court should dismiss the claims described in Grievance No. 2013-05-1269.
- The Court should dismiss the claims described in Grievance No. 2013-05-1410 against Defendants Bellinger and Ball, but the Court should not dismiss those claims against Defendant Briske and Defendant Jensen.
- The Court should dismiss the claims described in Grievance No. 2013-08-2127.

**III.     NOTICE TO PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Eastern District of Michigan Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.


Dated: April 11, 2019             s/ Mona K. Majzoub
                                  MONA K. MAJZOUB
                                  UNITED STATES MAGISTRATE JUDGE


**PROOF OF SERVICE**

      I hereby certify that a copy of this Report and Recommendation was served upon Plaintiff and Counsel of Record on this date.

Dated: April 11, 2019         s/ Leanne Hosking
                                      Case Manager